Good morning, Your Honors. Devin Burstein, Federal Defenders of San Diego, for Mr. Rodriguez-Mepfords. I'm going to endeavor to watch the clock and save two minutes for rebuttal. In the first case, Judge Fletcher said to my colleague, or actually to the government in addressing one of my colleagues' arguments, that we want to know that the district court understood and knew its options. It knew what it could do. And I think that is very, very true in this case. In the course of preparing, I've come to at least my thought that really this case can be largely decided within the confines of this court's en banc decision in Hinkson, and as that was fleshed out, or at least the rationale was fleshed out in Mancinas-Flores. And in Hinkson, this court en banc went to great lengths to explain the abuse of discretion standard. And it said, the first step of our abuse of discretion test is to determine de novo whether the district court identified the correct legal rule to apply the relief requested. If the trial court failed to do so, we must conclude it abused its discretion. And that's not some hollow statement. It's not we want them to check off a list that has no meaning, so we're making sure that they're tying their shoes right. It has real and important implications. And I think those come and are illustrated perhaps best by Mancinas-Flores, where the court is discussing, when we review for abuse of discretion, we necessarily review the district court's decision making process, not simply whether the decision resulted in a permissible outcome. And there's all types of language in Mancinas-Flores about really the problem when the district court has a discretionary decision but doesn't explain. And that's especially true here, where we have what is really a novel issue about the ability to withdraw from waivers to supervise release admissions. Here, there is no case law setting forth exactly the right standard. So it was imperative, in order for you to be able to review it meaningfully, for the district court to give some kind of explication. OK, I find this standard applicable. I'm exercising my discretion in denying it. These are the factors I've considered. I understand this is new case law. There's nothing here. There's nothing upon which this court can say, yeah, that's the standard the district court applied. And we agree or disagree. And therein, without anything further, lies an abuse of discretion that would require a remand. So I think the question is not whether the district court abused its discretion as a legal matter, so much as it is, OK, well, what's the remedy? What is the remand for? Let's suppose I agree with you, we agree with you on your basic point that there wasn't the identification of a standard. Then there are multiple options I think you're getting to this. One is just to remand, say nothing more than that. Another is to remand and to say what the proper standard is for admissions, withdrawal, fair and just, or something else. A third option is to say, for example, fair and just standard and to flesh out what that means. What are you asking for? That's exactly where I was going, Your Honor. I would be asking for actually a fourth option, which would be the district court abused its discretion by failing to identify and apply the correct legal standard. The correct legal standard is the fair and just standard, because it's the most closely analogous. Here, the district court, under that standard, simply, or no, excuse me, here, Mr. Rodriguez clearly met the fair and just standard. So we are remanding, reversing and remanding, as this court did in Ortega-Anciano with the direction that Mr. Rodriguez be allowed to withdraw from his violation admissions and proceed with his due process hearing rights under Rule 32.1. Let me ask procedurally, has he served an additional year incarceration? He is in the process. He caused his District of Arizona conviction. He was already serving the custody time for that when he was brought over to San Diego for his violation petition.  no glitches in the Bureau of Prisons. I can't speak to him, but assuming no glitches, he should not be moved, or it should just run. And he's scheduled for release near the end of this year. But it hasn't run yet in this case. No, no, it is not mooted out by anything like that. It would be anyway, but it hasn't run, right? It hasn't run. I'm not even sure that it's started. It may have started. I don't want to put my foot in my mouth, because I don't know the exact answer. But it certainly hasn't run. So do you believe that he has, that the district court had authority pursuant to the, his inherent authority to engage in the fair administration of justice to allow Rodriguez to withdraw his admissions? Is that your position? Yes, that's in part our position. So rule 32.1 says, you have these hearing rights, these due process hearing rights, and let's waive it. So if you can take a waiver, you must be allowed to withdraw it. And we would point to cases like Hastings. Well, I guess what I'm going to is the standard again. If the statute that gives the district court authority is one that says he has this authority in the fair administration of justice, I'm wondering if inherent in that isn't both the sense of fairness and a sense of justice, which is actually the Rule 11 standard without necessarily incorporating the Rule 11 standard. Right, and I think that's a good point. And I think really it stretches back to, I believe, it's what's the, Kirchhoff. It's the 1927 Supreme Court case that first enunciates that. And it's Justice Brandeis, Justice Holmes are on it. And basically, it's looking back to all these 1880s cases from state Supreme Courts. And it's saying, and it says, it's one of those short, old Supreme Court cases. And it says, you should have the privilege. It used to be so short. It did. Short and to the point. Now they're so long. So long, that's right. And you can believe there was not even a dissent in Kirchhoff. There was a one-line concurrence. It's 1927, and they said, you should be granted that privilege if for any reason it appears fair and just. And how can we argue with an idea of fair and just? So in this case, you're not arguing that a person who admits to certain allegations in a supervised release replication context has all the rights attendant to rule 32 guilty pleas. You're saying, however, in this case, given that everybody told him he was going to have six months, and then all of a sudden, and no one told him that the judge didn't have to follow that recommendation, which would be the case in an ordinary plea colloquy. You're saying, given this particular fact situation, it was unfair to hold him to it. That's exactly my argument. It's just, I'm not saying, and I cannot stress enough. This law, the case law is clear. The government's pointed it out and tried to attribute it to me. I'm not saying that rule 11 colloquy requirements applying supervised release, that would be disingenuous and it would be an error as a matter of law. Are you saying, though, that the judge must warn the defendant of the maximum sentence? Not necessarily in every case. I see that I'm, I want to answer your question. You should answer the question, please. Not in every case. But here, this case is very important. It was set for a contested hearing. Mr. Rodriguez was not going to admit. He was. But in any case where it's not part of the colloquy, this specific part, won't a defendant be able to come back and say, I got more than I expected? In the guilty plea context, of course, that doesn't work because you've been warned. Right. And in all the cases the government cites, there's been a warning. So how are district judges going to handle that situation? I think most of them, if we rule the way you want, will incorporate that as part of the colloquy when doing admissions to supervise release violations. And perhaps that's a good thing. That's what I think the Seventh Circuit said in their case, dealing with a similar issue, that it's a good thing. I'm not arguing that it would be required in every single case. But here, where the court knew that it was set for a contested hearing. And the court, in its candor, says on pages 20 and 25 of the record, look, I have a sense now that you thought you were getting six months and you shouldn't rely on that. And that's why he brings up the withdrawal thing. It comes from the court. So I think that not in every case, but here's something where it was required. And I don't think we need to put our finger on one specific thing. But we can say, as Judge Wardlaw was getting to the point, this is just not fair in this context, in this specific case. But I do think that some standard should come from this court for the future odd times that this does occur. Although one could say someone should have told him, by the way, the government's agreeing to six months, but that's not necessarily binding on the judge. Perhaps. Under the established case law in Grave and Kennell, this court is clear. We look to the record to see that there's been an affirmative advisement. The defendant never has the burden of proving the negative, that I was not told. I'd like to reserve the balance of 12 seconds. Thank you, Your Honor. May it please the court, Daniel Zip on behalf of the United States. Your Honors, there's remarkably few issues in this case that are actually in dispute. Both parties agree that the district court had the inherent authority under Rule 57 to allow this defendant to withdraw his admissions. Both parties argued and agree that the fair and just standard from the analogous Rule 11 standard seems to make sense in this case as well. And both parties agree that the defendant's reason for attempting to withdraw his admissions in this case was that he was unhappy with the writing on the wall as to where the sentencing was. What about the threshold problem that the district court didn't identify the fair and just standard, and thus under the Hinkson and other cases? Isn't that per se grounds for reversal? I don't think that's what Hinkson said. In Hinkson and the other cases cited by the defense counsel, the issue was whether the district court, in each of those cases, the district court applied the wrong legal standard. It's kind of an odd argument. Well, it's got a lot of language in there that the failure to identify the standard is itself a problem. Because the reviewing court can have no way of assessing the exercise of discretion without knowing what standard was being applied. This seems to be a unique case. And defense concedes, and the United States agrees that the Ninth Circuit has never addressed what the appropriate standard was. So it seems difficult to tell the district court there is no standard, and it's abuse of discretion not to adopt that standard. The district court has to identify a standard. On review, this court could say that's the wrong standard, but, or could say that's the right standard, but at least there would be an identified standard. So the Hinkson problem would be taken care of. Well, in response to that, I would say that both parties in their briefing to the district court applied this fair and just standard and addressed the issues in that context. Well, the government's brief was a little, I don't know, one toe in the water kind of thing. It wasn't a full embrace of fair and just, at least as I read it. You said even under the fair and just standard, there was no fair and just standard here. Fair and just reason for withdrawal in this case. That's correct. But all of the discussion was in the context of that fair and just. And I think under Cardi, the court has instructed that we're not to basically assume that the district court was applying a wrong standard just because it didn't say anything. And in this court, in this case, the district court had before it all the arguments in that context. And it's a decision. And it can't be an absolute, immediate abuse of discretion for him not to have affirmatively announced it. And the other thing that troubled me about your brief is that you said just because you don't like the sentence you're getting doesn't mean you can withdraw your admissions. And all the cases you cite are cases where there's been a Rule 11 plea colloquy. And part of that is a statutory admonition that the judge does not have to apply the sentence that the parties agree to. And that the sentence that you may get may be higher or lower than what you think you're getting based on the recommendations of probation office or your counsel or the prosecutor. Do you understand that? Do you still want to waive your rights? Those are those cases. This is a case where it seemed pretty clear that everybody, including the judge, knew that the sentence was supposed to be six months. It had been agreed to be six months. And then after the admissions, then the judge says, well, I'm going to change that sentence. So he relied on that. And it wasn't until after the admissions were entered. So I kind of come at this case in two ways, both the way that we've been discussing it up to this point. But I also wonder whether his admissions were truly voluntary and knowledgeable, and whether he fully understood what the consequences of his admissions were, given that everybody recognized the assumption of six months. Your Honor, I would respond to that by pointing you back at the actual factual basis section of what happened in this case. And I think because we're talking about it in the Rule 11 context, it has been presented as if there was some sort of actual agreement amongst the parties, written or otherwise. If you look at what actually happened in this case, and I was the prosecutor that handled it, there was no actual quid pro quo agreement between the defendant, the probation officer, or the prosecution in this case. But there was not a plea agreement. There wasn't a plea agreement. There wasn't. But there was an understanding. And that's what the probation, well, didn't you understand he was going to get six months? Your Honor, what? But what was the prosecutor's understanding at the time? Our only position was, what occurred and what's written in the factual basis is that immediately before sentencing, unprompted, the probation officer said, I've looked at the sentence he received before, and I'm reducing my recommendation. The United States then said, fine, we'll defer to your recommendation. And then we went forward. So you agreed to six months before he pled the probation office and the prosecutor. And so that was the understanding on which he went forward and pled. So that, to me, would make the admissions suspect. Because I understand that in this particular case, maybe all of this is a hullabaloo, because you can still prove the two violations. And you would still prove the two violations. But it does make the admission suspect not being truly knowing and voluntary in this case. Also, it does bother me, too, that there's two violations for the same act. And I know that's kind of inherent in what the standard conditions are. But it does raise his time. And that's why it ended up being at 12 months. Well, I would respond to that and say,  that his admissions were not knowing and voluntary, because he was guaranteed a six-month sentence. And that simply wasn't the case. That's not what happened in this case. I think he was guaranteed that he made the admissions on the assumption that, in reasonable reliance, that. Well, I don't think that that's what his argument was. If you look at it, the argument was that I don't know where that guarantee or where even that assumption would come from. All that happened in this case is the probation officer changed his recommendation. And the United States, who is generally not terribly involved in these cases, because it primarily comes at the tail end of the sentencing process, when it's mostly an issue between the district court and the probation and the defendant, the United States said one word and went in for the hearing. So I don't think it would render it involuntary, based on the probation officer simply reducing its recommendation. But didn't the Seventh Circuit in the LeBlanc case suggested, or even stated, that it's not going to be knowing, intelligent, and voluntary if you're not aware of the maximum possible sentence? Well, Your Honor, that might be the case in the Seventh Circuit. But in the Ninth Circuit, in Siegel, this Court has held explicitly that the Rule 11 colloquy, including the recommendation of what the maximum sentence is, is not required. Sure, not the whole colloquy, nor did the Seventh Circuit suggest that. But the specific issue of the maximum available time is a prerequisite to finding that it was knowing, intelligent, and voluntary. Again, that may be what the Seventh Circuit held. Why does that rule not make sense? Because you want to make sure before someone admits that they haven't gotten bad advice, misunderstood, and it's just a way to ensure that the person understands before you do this and take this step, know that you could get whatever it is, 18 months, two years, three years, whatever it may be in the particular case. And that's how the whole Rule 11 thing developed in the first place. And this seems remarkably similar when you're focused on the sentence. Well, Your Honor, I think that Rule 32, as it exists now, outlines what it is that the district court needs to advise the defendant. And that is not currently included in Rule 32. It might make sense to amend that and to add that to Rule 32. But on the facts of this case, it can't have been an abuse of the discretion for this district court not to do something that he wasn't required to do. Any other questions? No. Thank you. Thank you, counsel. This case will be submitted, and the court will be in a 10-minute recess.
judges: Kavanaugh, Fletcher B. , Wardlaw